IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARY L. POE,                          )
                                      )
      Plaintiff,                      )
                                      )
VS.                                   )          No. 1-04-1224-T
                                      )
JO ANNE B. BARNHART,                  )
COMMISSIONER, SOCIAL SECURITY         )
ADMINISTRATION,                       )
                                      )
      Defendant.                      )

---

## ORDER REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

---

      Plaintiff Mary L. Poe filed this action to obtain judicial review of the Defendant

Commissioner's final decision denying her applications for disability benefits and widow's

benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*

Plaintiff first applied for benefits on November 16, 2001, and was denied initially and upon

reconsideration by the Social Security Administration ("SSA"). Following a hearing before

an administrative law judge ("ALJ"), a decision was issued on October 8, 2003, finding that

Plaintiff was not disabled.

      Plaintiff requested a hearing with the Appeals Council.  On July 24, 2004, the

Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Thus, the

ALJ's decision became the final decision of the Commissioner. Plaintiff subsequently filed

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on 4/25/05

this action, requesting that the court reverse the Commissioner's decision and award benefits, or in the alternative, remand the matter pursuant to sentence four of 42 U.S.C. § 405(g) on the grounds that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Michael W. Hinds.   The Commissioner contends that the decision is supported by substantial evidence.   For the reasons set forth below, this action is REMANDED so that the Commissioner may properly evaluate Dr. Hinds' opinion.

<u>Standard of Review</u>

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied.  <u>See</u> 42 U.S.C. § 405 (g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Her v. Commissioner of Soc. Sec.</u>, 203 F.3d 388, 389 (6th Cir. 1999); <u>Walters v. Commissioner of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Drummond v. Commissioner of Soc. Sec.</u>, 126 F.3d 837, 840 (6th Cir. 1997);  <u>Cutlip v. Secretary of Health and Human Serv.</u>, 25 F.3d 284, 286 (6th Cir. 1994).   Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. <u>Perales</u>, 402 U.S. at 401; <u>Her</u>, 203 F.3d at 389; <u>Drummond</u>, 126 F.3d at 840; <u>Cutlip</u>, 25 F.3d at 286.  The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility.  <u>Walters</u>, 127 F.3d at 528 (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)); <u>Cutlip</u>, 25 F.3d at 286.  In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also

supports the opposite conclusion. <u>Smith v. Chater</u>, 99 F.3d 780, 782 (6th Cir. 1996) (citing <u>Cutlip</u>, 25 F.3d at 286).

Background of the Case

At the time of the administrative hearing, Plaintiff was a fifty-four year old female with a high school education. Plaintiff alleges that she became disabled on September 23, 2001, due to debilitating injuries sustained in a riding lawnmower accident. Prior to that date, she had past relevant work experience as a sewing machine operator and a material handler. The ALJ made the following specific findings: (1) Plaintiff meets the nondisability requirements for disability benefits set forth in § 216(i) of the Act and disabled widow benefits until April 1, 2002, pursuant to § 202(e) of the Act; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff has an impairment or combination of impairments considered "severe" under 20 C.F.R. § 404.1520(b); (4) Plaintiff's impairments do not meet or exceed one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Plaintiff's allegations regarding her limitations are not totally credible; (6) the ALJ has properly consider all of the medical opinions in the record when determining the severity of Plaintiff's impairments; (7) Plaintiff remains capable of lifting, carrying, pushing, and pulling fifty pounds occasionally and twenty-five pounds frequently, of standing and/or walking for six hours in an eight-hour workday, and of sitting for six hours in an eight-hour workday, with no physical nonexertional limitations; (8) psychologically, Plaintiff remains capable of understanding,

3

remembering, and carrying out at least simple work instructions; of making simple-work related decisions; of interacting appropriately with supervisors, coworkers, and the public; and of adapting appropriately to routine changes in a work setting; (9) Plaintiff's past relevant work as a sewing machine operator did not require the performance of work-related activities precluded by her residual functional capacity; (10) Plaintiff's medically determinable status post L1 compression fracture, lumbar degenerative disc disease with osteopenia, and depressive disorder do not prevent the claimant from performing her past relevant work; and (11) Plaintiff was not under a "disability" as defined by the Act.

Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity due to a "physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A).   The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. 42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis,

4

as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1.   An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2.   An individual who does not have a severe impairment will not be found to be disabled.

3.   A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.

4.   An individual who can perform work that he has done in the past will not be found to be disabled.

5.   If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989).

In this case, analysis proceeded to the fourth step, where the ALJ found that Plaintiff is not disabled because she has the residual functional capacity to perform a full range of medium and unskilled work; thus, she was able to perform her past relevant work as a sewing machine operator. Plaintiff contends that the ALJ improperly ignored the opinion of her treating physician, Dr. Hinds, regarding the severity of her nonexertional mental impairments. The court must determine if there is substantial evidence in the record to support the ALJ's decision.

The medical evidence in the record shows that Plaintiff was admitted to the

5

emergency room at the Methodist Volunteer Hospital in Martin, Tennessee, on September 23, 2001 when a riding lawnmower that she was operating rolled over and fell on top of her. Radiographic studies revealed an acute compression fracture of the L1 vertebral body, along with degenerative disc disease at the T12-L1 and L5-S1 levels. Tr. at 120. A bone scan and magnetic resonance imaging of the lumbar spine performed were consistent with a compression fracture at the L1 level. Tr. at 120. Plaintiff was fitted for a back brace and was discharged from the hospital on September 27, 2001. Tr. at 19.

On October 4, 2001, Plaintiff was seen at the Martin Specialty Clinic for a follow-up. She reported that she had been doing relatively well, with no bowel or bladder dysfunction and no numbness, tingling, or problems with her lower extremities. Tr. at 128. Plaintiff also said that her back pain was decreasing and that she was wearing a brace. Tr. at 128.

On November 1, 2001, Plaintiff was seen by Dr. Peter J. Lund for another follow-up appointment. Plaintiff told Dr. Lund that she was still experiencing some discomfort but that it was getting better. Tr. at 121. Dr. Lund was concerned that her brace might not be fitting properly. Tr. at 121. Dr. Lund also stated that the "[l]umbar height at the compression level is unchanged. Middle column height is still normal and she has about a 50% loss of anterior column height." Tr. at 121.

On January 7, 2002, Dr. Donita Keown performed a consultative examination of Plaintiff at the request of Tennessee Disability Determination Section ("DDS"). Dr. Keown noted that Plaintiff was sixty-six inches tall, weighed 192 pounds, and her blood pressure

6

was 140/86. Tr. at 136. Plaintiff stated that she had a history of rheumatoid arthritis dating back to 1988, but that she had not been treated for that impairment. Tr. at 135. Plaintiff complained of daily joint pain and lower back pain that increased with sitting, standing, or walking for any length of time. Tr. at 135. Plaintiff also complained of shortness of breath during all activities. Tr. at 135. Dr. Keown noted that Plaintiff smoked more than a pack of cigarettes a day, did not use any other inhalers or pulmonary medicine, and was not taking any anti-hypertension medicine. Tr. at 135. Dr. Keown also found that: Plaintiff moved slowly and ambulated with a cane; her range of motion of the neck was guarded; Heberden's nodes were found on her distal interphalangeal (DIP) joints of bilateral index fingers; Plaintiff voiced pain with all joint testing and guarded against full manipulation; her range of motion was reduced in many joints and produced pain diffusely; the straight leg raise testing in the seated position caused knee pain; hand strength was 4+/5 on the right, and 5/5 on the left; and she walked slowly with a shuffling gate. Tr. at 136-38. A lumbar spine x-ray taken that day demonstrated an old-appearing compression fracture at L1, marked osteopenia, and atherosclerotic changes of the aorta. Tr. at 144. In addition, pulmonary function tests were within normal limits. Tr. at 139-43. As a result of her examination, Dr. Keown opined that Plaintiff remained capable of lifting and/or carrying twenty pounds frequently, of standing and/or walking for four to six hours in an eight-hour workday, and of sitting for four to six hours. Tr. at 138.

Two non-examining state agency doctors completed separate Physical Residual

Functional Capacity ("RFC") Assessments on January 17, 2002 and June 27, 2002. Both doctors opined that Plaintiff was capable of lifting fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking for a total of about six hours in an eight-hour workday, and unlimited pushing and/or pulling. Tr. at 145-50, 151-58. These exertional limitations correspond to the SSA's definition for a full range of "medium" work. 20 C.F.R. § 404.1567(c). In addition, the January 17th assessment indicated that Plaintiff should avoid exposure to environmental irritants such as fumes and gases, that Dr. Keown's limitations were based on Plaintiff's current condition and did not take into account projected improvement, and that Plaintiff's allegations of pain were fully credible but that pain would improve with healing. Tr. at 145-50. The June 27th assessment did not include an assessment of Plaintiff's credibility as to her allegations of pain and it stated that Plaintiff had no environmental limitations. Tr. at 151-58.

On May 1, 2003, Plaintiff was seen by Dr. Hinds and A.B. Marlar, P.A., his physician's assistant, at the Sharon Clinic.[1] Plaintiff was noted as weighing 201 pounds with a blood pressure reading of 152/70. Tr. at 161-62. Plaintiff complained of generalized stiffness, back pain, knee pain, and neck pain which was greater during times of prolonged sitting, bending, and getting in and out of her car or bed. Tr. at 161-62. Plaintiff also complained of chronic shortness of breath, chronic myalgia, arthralgias, and joint inflamation. Tr. at 161-62. Plaintiff reported her back injury and stated that she had been

---

[1] Plaintiff was applying for TennCare benefits and needed to establish with a primary care provider.

diagnosed with osteoarthritis in 2001 and rheumatoid arthritis in 1984. Tr. at 161-62. Plaintiff also admitted that she was currently smoking one and a half packs of cigarettes per day. Tr. at 161-62. Upon examination, it was determined that: Plaintiff's thyroid was slightly enlarged; she had some generalized wheezing with expiration; she had some upper back kyphosis; she was experiencing muscle pain in her paraspinous muscles from T1 to L4-5; and muscle strength was within normal limits. Tr. at 161-62. Dr. Marlar opined that Plaintiff suffered from chronic back pain, hypertension, thyroid disease, hyperlipidemia, hypertriglyceridemia by history, and rheumatoid arthritis by history. Tr. at 162.

On May 27, 2003, Plaintiff was seen at the Sharon Clinic. Plaintiff weighed 201 pounds and her blood pressure was 148/88. Tr. at 160. A laboratory study had confirmed Plaintiff's hypothyroidism and she was started on Synthroid. Tr. at 160.

On August 15, 2003, Plaintiff was seen at Sharon Clinic. A physical examination of Plaintiff revealed diminished range of motion of the neck, chronic wheezing of the lungs, and reduced sensation in the right L4-5 dermatome. Tr. at 182. Straight leg raise testing was positive at twenty degrees bilaterally, and grip strength decreased bilaterally. Tr. at 182. Plaintiff's diagnosis was lower back pain, hypothyroidism, anxiety/depression, and bronchitis. Tr. at 182.

On August 19, 2003, Dr. Hinds and P.A. Marlar completed a medical source statement in which they opined that Plaintiff cannot meet the exertional requirements of even sedentary work. Tr. at 164-65. Dr. Hinds and P.A. Marlar opined that Plaintiff: was able

9

to walk one city block at most; was able to stand or sit for twenty minutes at a time; required the ability to shift position from sitting to standing to walking at will; required the freedom to take unscheduled breaks, lasting about fifteen minutes each, three to four times per eight-hour workday; was able to lift less than ten pounds occasionally; was unable to crouch, crawl, or climb ladders; was rarely able to stoop or climb stairs; was significantly limited in regard to repetitive reaching, handling, and fingering; was able to use hands for grasping only ten percent of an eight-hour workday; was able to use fingers for fine manipulations only ten percent of an eight-hour workday; and was able to use arms for reaching only five hours of an eight-hour workday. Tr. at 164-68.

Dr. Hinds and P.A. Marlar also opined as to Plaintiff's mental condition. Their assessment stated that Plaintiff had insomnia, depression, anxiety, somatoform disorder, and personality disorder. Tr. at 165. The report stated that Plaintiff was incapable of tolerating the work stress involved with "low stress jobs" and that, given Plaintiff's mental diagnosis, she "will be unable to perform in the work force. Patient's physical problems and emotional status will surely have a poor outcome!" Tr. at 165. In addition, the assessment stated that Plaintiff's impairments did not produce "good days" and "bad days" for her but, rather, "constant bad days." Tr. at 167.

On August 28, 2003, Bruce Amble, Ph.D., performed a psychological evaluation of Plaintiff. Dr. Amble made the following diagnostic impressions: obesity, nicotine dependence, pain disorder associated with both psychological factors and general medical

10

condition, undifferentiated somatoform disorder (provisional), adjustment disorder with mixed anxiety and depressed mood, and depressive disorder. Tr. at 170-74. Dr. Amble noted that Plaintiff appeared mildly disheveled, used cosmetics minimally, and did not fix her hair. Tr. at 171. Her mood appeared somber but moderately tense. Tr. at 171. She would sometimes rock in her chair, which he believed to be caused by anxiety and stress. Tr. at 171. Plaintiff told Dr. Amble that she kept mostly to herself and socialized only with her children and grandchildren. Tr. at 172.

Dr. Amble performed a mental status evaluation and found that Plaintiff was unable to interpret proverbs, failed to recall a recent news story and failed social adjustment questions; however, she was able to understand and remember simple instructions and her response time was generally adequate. Tr. at 172-73. Dr. Amble noted that Plaintiff appeared motivated for employment if she were able to work, but that her lack of self-esteem and social confidence "may well impair her capacity for continued employment." Tr. at 173. In addition, Dr. Amble stated that Plaintiff's "[s]ocial interaction improves during the course of the interview and I think she is a socially engaging individual." Tr. at 173. He also noted that although compliance with her medications may reduce her symptoms, Plaintiff did not take prescribed medications because she was unable to afford them. Tr. at 173. Dr. Amble opined that Plaintiff's capacity to deal with the pressure of day-to-day employment appeared more problematic because of her health problems and subjective experience of pain and stress. Tr. at 173.

11

On September 11, 2003, Plaintiff was seen at the Sharon Clinic for a follow-up appointment. Plaintiff was prescribed Zoloft for depression. Tr. at 180-81.

On December 30, 2003, Plaintiff was seen at the Sharon Clinic because she continued to suffer from chronic lower back pain. Tr. at 178-79. Plaintiff's weight had increased to 209 pounds. Tr. at 178. Plaintiff's straight leg raise testing was positive bilaterally at thirty degrees. Tr. at 178-79. Plaintiff was observed as having an abnormal gait and several skin lesions. Tr. at 178-79. She was diagnosed with hypothyroidism, lower back pain, and osteopenia. Tr. at 178-79.

## The Treating Physician Rule

The opinion of a treating physician must be given great weight when it is supported by sufficient medical evidence. See 20 C.F.R. § 404.1527(d)(2). Under the treating physician rule, opinions of physicians who have treated the plaintiff receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." Id. The ALJ may reject opinions that are not supported by the medical findings and resolve conflicts in the evidence. See Walters, 127 F.3d at 529-30 ; Cutlip, 25 F.3d at 286-87; Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993); Cohen v. Secretary of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992); Young v. Secretary of Health and Human Serv., 925 F.2d 146, 151 (6th Cir. 1990); Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988); Hardaway v. Secretary of Health & Human Servs., 823 F.2d 922, 927 (6th Cir.1987). If the

adjudicator finds that a treating physician's conclusion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the medical record, he is required to apply the following factors in determining how much weight to give a treating physician: "the length of the treatment relationship and frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion with the record as a whole, and the specialization of the treating source...." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Although the adjudicator is given deference when evaluating these factors, there is a "clear procedural requirement" to have the opinion of a plaintiff's treating physician considered. Id. In Wilson, the Sixth Circuit explained:

> [Twenty C.F.R. § 404.1527(d)(2)] contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." Id. A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. See Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004).

Id. at 544-45. Thus, an adjudicator must "give good reasons" for rejecting a plaintiff's

treating physician.  Id.

In the present case, the ALJ found that Plaintiff was not disabled because she was capable of returning to her past relevant work as a sewing machine operator, which he classified as light and unskilled.  The ALJ based his findings on the RFC of the non-examining state agency doctors that stated that Plaintiff was capable of lifting, carrying, pushing, and pulling fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking six hours of an eight-hour workday, and sitting six hours of an eight-hour workday.

With regard to Plaintiff's mental capabilities, the ALJ determined that Plaintiff remained capable of understanding, remembering, and carrying out at least simple work instructions; of making simple work-related decisions; of interacting appropriately with supervisors, coworkers, and the public; and of adapting appropriately to routine changes in a work setting.  In addition, the ALJ found that Plaintiff was only mildly restricted in the activities of daily living and in maintaining appropriate social functioning; that she was moderately restricted in maintaining concentration, persistence, and pace; and that there was no evidence of any extended episodes of decompression.  The ALJ based these conclusions on Plaintiff's subjective allegations of pain and Dr. Amble's report, but not his assessment form.

In his decision, the ALJ failed to discuss Dr. Hinds' and P.A. Marlar's opinions that Plaintiff was incapable of tolerating even the work stress involved with "low stress" jobs.

14

Although the ALJ stated that Dr. Hinds' and P.A. Marlar's assessment was not given any evidentiary weight because "because it was based on one examination, because the conclusions reached are completely inconsistent with the findings he recorded in his examination report, and because his opinion is contradicted by other evidence," the ALJ's opinion discussed only Dr. Hinds' and P.A. Marlar's findings as to Plaintiff's physical exertional limitations. Tr. at 21. The ALJ's decision failed to discuss Dr. Hinds' and P.A. Marlar's opinions regarding the severity of Plaintiff's nonexertional mental impairments. As a result, the ALJ did not give proper evidentiary weight to Plaintiff's treating physician when he evaluated her mental limitations.

The court concludes that the ALJ's decision that Plaintiff is not disabled is not supported by substantial because he failed to consider Plaintiff's treating physicians' opinions as to her nonexertional mental impairments. Accordingly, the decision of the Commissioner is hereby REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.


_James D. Todd_

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_20 April 2005_

DATE

15

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 18 in
case 1:04-CV-01224 was distributed by fax, mail, or direct printing on
April 25, 2005 to the parties listed.

---

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

John B. Whitesell
WHITESELL LAW OFFICES
P.O. Box 1048
Fulton, KY 42401

Honorable James Todd
US DISTRICT COURT